**EDGEMOOR TERRACE CIVIC ASSOCIATION, a corporation of the State of Delaware, Plaintiff,**

**v.**

**The SPINNING WHEEL INN, INC., a corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware.

New Castle.

July 3, 1969.

Charles K. Keil, of Bayard, Brill & Handelman, Wilmington, for plaintiff.

Lawrence M. Sullivan, of Sullivan, Potter & Roeberg, Wilmington, for defendant.

MARVEL, Vice Chancellor:

In 1948, plaintiff, as defendant concedes, succeeded to an alleged right to enforce certain restrictive covenants imposed in 1939 on a part of a residential developmen known as Edgemoor Terrace as well as on certain business lots located on both sides of Governor Printz Boulevard, a highway which borders Edgemoor Terrace. Plaintiff now seeks a permanent injunction against the carrying on by defendant of a restaurant business located on one of the restricted business lots located on Governor Printz Boulevard in the area involved.

The covenant on which plaintiff principally relies as a basis for the granting of equitable relief, as prayed for, is covenant (b) in the deed here relied on. Such

covenant purports to grant to plaintiff as the successor or assign of Wilmington Construction Company the right to pass on the suitability of any business proposed to be carried on on those lots at Edgemoor Terrace which front on both sides of Governor Printz Boulevard. It reads as follows:

"All lots fronting on both sides of Governor Printz Boulevard may be used for business purposes; but no business shall be conducted thereon until it has been approved in writing by the party of the first part, its successors, or assigns."

Covenant (e) of such restrictions, on the other hand, is more specific insofar as businesses are concerned. It provides as follows:

"No noxious or offensive trade shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

Other relevant deed convenants here involved are concerned with obtaining prior approval from plaintiff as the successor or assign of the original grantor of the area here involved of any structure proposed to be moved onto or erected on any lot in Edgemoor Terrace.

The commercial section of Edgemoor Terrace consists principally of two centers, one being that of the Edgemoor Theatre and the other that of the Chadnofskys whose interests are now held in the name of their corporation, the defendant. The businesses in the former complex for the most part antedate plaintiff's rights under the restrictive covenants here involved. However, there is testimony that certain new businesses in such complex have not been policed.

As noted above, defendant, without plaintiff's approval, at present operates a restaurant business on a lot fronting on the northwest side of Governor Printz Boulevard, and plaintiff, or more accurately,[1] its ac-

---

1. In 1966, plaintiff's charter was forfeited. However, it was promptly revived and talk of dissolution overruled. The board which apparently rejected defend-

tive members and officers, having reached a conclusion that defendant's business is inappropriate for the restricted area here involved, seeks an order enjoining the continued operation of such a restaurant business. Defendant conceded at trial that plaintiff has succeeded to the right originally reposed in Wilmington Construction Company to seek enforcement of the covenants here involved, but contends that the covenant pertaining to plaintiff's alleged right to pass on what businesses should be allowed to operate on lots bordering Governor Printz Boulevard lacks sufficient specificity. Alternatively, should such covenant in itself be deemed valid, defendant contends that plaintiff seeks to have it applied against its activities in an arbitrary and unfair manner. Defendant also relies on the defenses of laches and waiver and estoppel, contending that plaintiff allowed defendant to proceed with renovations of its building without objection and has generally sought enforcement of the covenant in the development here involved in a sporadic fashion and with an uneven hand.

In 1952, Morris Chadnofsky, now president of the defendant corporation, acquired title to the parcel of land on which defendant's restaurant is now located. At the time, Mr. Chadnofsky sought and obtained permission from plaintiff to construct a building designed to contain a retail bakery shop, a delicatessen store, and a valet and tonsorial parlor. Sanitary problems thereafter developed in the operation of the bakery; rats were observed, and ultimately, because of unsanitary conditions at the bakery, Mr. Morris Chadnofsky was prosecuted by the State Board of Health and convicted of violation of provisions of the State Health Code. As a result the bakery went out of business. There is no doubt but that members of plaintiff's organization instigated inspections by State Board of Health inspectors, which examinations led to Mr. Chadnofsky's

conviction in the Court of Common Pleas. It is clear from the record, however, that a number of other areas in and about Edgemoor Terrace have been and still are for various reasons plagued with rats. Furthermore, testimony adduced at trial to the effect that bakeries are particularly susceptible to vermin was not contradicted. Finally, the former condition of the bakery appears to be irrelevant inasmuch as patrons of the restaurant now operated by defendant testified that there was no sanitation problem at such facility and that, in fact, it is unusually clean and sanitary.

The Chadnofsky bakery operation was discontinued in 1964 and the equipment used in the business was thereafter gradually disposed of. In 1965 defendant began to rebuild the interior of their bakery building so as to equip it as a conventional restaurant. When such work was finished in 1966 defendant applied for a license to sell intoxicating beverages in its converted building. Plaintiff excuses its inaction during the renovation period by contending that its members did not know what was going on inside defendant's building and suspected that a furniture business was contemplated.

■ First of all I have no doubt but that one or more members of the Chadnofsky family, the organizers of the defendant corporation, which is now carrying on a restaurant business on the site in issue, were aware of the existence of the principal covenant here involved, namely plaintiff's claimed right to grant or withhold approval of the carrying on of any business in the area in question. In fact, not only was permission to operate certain businesses on the premises sought and granted to Morris Chadnofsky in 1953, in addition application to operate the present restaurant was sought and refused in 1966. Furthermore, if there were any doubt about actual knowledge of said restrictions on the part of one or more members of the Chad-

ant's application was elected at a meeting attended by some thirty-five members

out of a total membership of approximately two hundred and thirty homes.

nofsky family, they must be charged with constructive knowledge of the contents of the deed conveying title to the premises here in issue, 20 Am.Jur.2d, Covenants, Conditions, Etc. § 309.

■ In seeking to resolve the problem before me it must be noted at the outset that the free alienation of land is favored. Accordingly, restrictive covenants which impede the free buying and selling of land are to be strictly construed, and if the language used in a restrictive covenant is overly vague or imprecise, a court should be reluctant to enforce it. On the other hand, if the covenant sought to be enforced is clear and subject to being applied in an even-handed manner because of built-in standards for testing a proposed use of the land to be restricted, it will be upheld provided the authority charged with the right and duty to bring about its enforcement has not acted in an arbitrary or capricious manner, Alliegro v. Home Owners, 35 Del.Ch. 543, 122 A.2d 910.

While the trial record generally supports a finding that plaintiff has demonstrated diligence in passing on what proposed businesses should be approved under the covenant, there is no explanation as to why certain businesses have operated for ten years and more without plaintiff's approval or why an approved produce market on the river side of Governor Printz Boulevard was permitted to discard spoiled vegetation to the rear resulting in the attraction of rats. However, I do not deem it necessary to determine whether or not covenant (b) has been policed in an even-handed manner because unless the restrictive terms of covenant (e) pertaining to the banning of noxious or offensive trades and nuisances are read into the absolute power contained in covenant (b), such latter covenant is, in my opinion, too broad to be independently enforceable, Exchange Realty Co. v. Bird, 16 Ohio Law Abstract 391. Thus, in the case of Hoffman v. Balka, 175 Pa.Super. 344, 104 A.2d 188, where approval by a committee of a proposed business was required by a restrictive covenant, a charge of lack of standards to guide the committee was rejected, the trial court having found that the several covenants involved, read together, were sufficiently precise in that they provided that in order to merit committee approval a retail commercial enterprise must be proposed which was neither noxious nor offensive and which was not of a nature which was or might become an annoyance or nuisance to the neighborhood. Such holding was affirmed on appeal, the courts apparently being of the opinion that approval of the erection of a second gasoline station would mean that two-thirds of a subdivision's commercial area would be devoted to such use, thus excluding other needed neighborhood shops and presumably creating an annoyance or worse.

In the case at bar, however, there appears to have been no effort to gauge the appropriateness of defendant's business on the ground of its being noxious or offensive, and no real examination into the question as to whether or not defendant's business is or might become an annoyance or nuisance to the neighborhood as a whole. And while plaintiff's officials expressed concern at trial over increased traffic, parking problems, light, noise, sanitation, activity after normal business hours, and the alleged down-grading effects of liquor being consumed on the premises were defendant to obtain a liquor license in the event it is permitted to continue its restaurant business, such views appear to have been subjectively adopted by such witnesses without regard to the general wants and needs of the neighborhood as a whole, and the fact that they may have acted fairly and reasonably, according to their lights, is irrelevant. I say this because the guidelines of covenant (e), as they control action under covenant (b), are alone of concern here.

■■ Having considered the testimony and exhibits and having viewed the premises and observed their geographical loca-

tion and parking facilities in relation to the residential section of Edgemoor Terrace, I am satisfied that plaintiff's declination to approve defendant's business is founded on a ground other than that of its being noxious or offensive or of being or posing a threat of being an annoyance or nuisance to the neighborhood. In other words, it is my opinion that defendant's business failed to receive plaintiff's approval for reasons lying outside of the guidelines contained in covenant (e), and without guidelines plaintiff's right to approve or disapprove any business in the area would be unbridled and subject to arbitrary and capricious abuse. This does not mean, of course, that a case falling within the guidelines here controlling may not hereafter be established. However, such a case has not been made on the present record. Because of the conclusions above reached it will be unnecessary to consider defendant's defenses of laches, waiver and estoppel.

On notice, an order dismissing the complaint may be submitted.