SEABREAK HOMEOWNERS ASSOCIATION, INC., a Delaware corporation, Plaintiff,

v.

Zelic A. GRESSER and Anne G. Gresser, Defendants.

Civ. A. No. 1204.

Court of Chancery of Delaware, Sussex County.

Submitted: Aug. 13, 1986.
Decided: Aug. 22, 1986.

John A. Sergovic, Jr., of Tunnell & Raysor, Georgetown, for plaintiff.

F. Michael Parkowski and I. Barry Guerke, of Parkowski, Noble & Guerke, P.A., Dover, for defendants.

## OPINION

JACOBS, Vice Chancellor.

The plaintiff, Seabreak Homeowners Association, Inc. ("the Association") is a Delaware corporation whose members are owners of lots in Seabreak Division, a beachfront development located in Bethany Beach, Delaware ("Seabreak"). Under Article VI, Section 6 of the Declaration of Restrictions that bind the lots in Seabreak, no building can be constructed on a lot without the prior written approval of the Association through its duly constituted Architectural Review Committee ("ARC"). Contending that the defendants, Zelic and Anne Gresser, were constructing a beachfront house based on plans and specifications that the ARC had rejected, the Association, on July 16, 1986, filed this action to enjoin the Gressers from proceeding with the construction. On July 18, 1986, the Association presented a motion for a temporary restraining order. Following the submission of memoranda and oral argument, that motion was denied. Thereafter, the Association moved for a preliminary injunction and the parties engaged in discovery in connection with that motion, which was argued on August 13, 1986 following the submission of legal memoranda. This is the decision of the Court on the Association's motion for a preliminary injunction.

### I.

The pertinent facts are not disputed. The Gressers purchased their lot (one of fourteen oceanfront lots in Seabreak, which consists of 52 lots *in toto*) in October,

1985. At that time only one oceanfront residence was under construction. The Gressers proceeded to develop design plans with the assistance of their architect. They forwarded their plans to Mr. Hal Barber, a representative of and consultant to the ARC. Mr. Barber approved the plans and submitted them to the ARC in late April or early May, 1986. Although Mrs. Gresser was a member of the ARC, she was not invited to attend the meeting at which the Gresser plans were considered. Thereafter, the ARC sent the Gressers a letter dated May 30, 1986, advising them that their plans would not be approved because the proposed residence would have "enclosed areas (2 story glass enclosed) within 12 feet of the front (east) building line," which the ARC felt would "inhibit the view of nearby lot owners." The ARC went on to advise the Gressers that

"... until such changes may be made to our covenants, the [ARC] will attempt to inform all Seakbreak lot owners that we have adopted, for all ocean front lots, a restriction against fully enclosed areas 12 feet west of the eastern building line."

This marked the first occasion that the ARC had formally adopted a 12 foot setback restriction and had given notice to anyone, including the Gressers, that such a restriction had been adopted.

The ARC's decision highlights two elements that are central to this controversy: (i) the undisputed fact that enclosed spaces protruding from the Gressers' proposed beachfront residence will encroach, to some extent, within the zone running 12 feet west from the eastern building line and (ii) the Association's (hotly disputed) claim that the ARC had validly adopted a prohibition against such encroachments. What follows is the background relating to both elements.

The Gressers' proposed oceanfront residence is an architect-designed "contemporary" style structure representing an in-

vestment of several hundred thousand dollars. The lot alone cost $365,000.

The Gresser plans called for two triangular glass enclosures on the ocean-facing front of the residence. The glass enclosures project to a point located 4.75 feet beyond the east side of the building. The main face of the building is set back 12 feet from the dune line. These two-story enclosures are not merely external structures. They also represent part of the integral concept and layout of the residence so that the various views or vistas can be enjoyed from inside the residence at different points. According to the Gressers, about 90% of each enclosure is to be clad in reflective glass so that they will reflect the surrounding environment (e.g. sky, clouds, sun, etc.), since clear glass would reveal any interior structures or visibly expose drapes or other window coverings. In any event, it is undisputed that the triangular glass projections would encroach 4.75 feet within the 12 foot space between the house and the dune line. It is that encroachment that the ARC and the Association find offensive.

As for the "12 foot setback" restriction, it is undisputed that no such restriction existed at the time the Gressers settled on their lot in October, 1985,[1] and the only other beachfront house then under construction had not been made subject to any such restriction. The only restrictions covering the subject of building setbacks were found in Article VI, Section 10 of the recorded Declaration of Restrictions. That Section succinctly states:

Section 10. *Setback Restrictions— Height Limitation.*

(a) The building setback requirement, height limitations, and permitted accessory use, shall be as provided by the Zoning Ordinance of Sussex County for the MR zoning district, as such may be amended from time to time.

(b) In the event there is no Zoning Ordinance covering the property, the

---

1. Nor at the time the Gressers designed their proposed residence, or when they submitted their plans to Mr. Barber in January, 1986, or to the ARC in late April, 1986, for approval.

building setback requirements, height limitations and accessory uses shall be recommended by the Architectural Review Committee of the Association and formally adopted by the Association, and submitted as an amendment to these presents.

It is undisputed that under Article VI, Section 10, the only applicable building setback requirement was the dune line ("dune line") established by the Department of Natural Resources and Environmental Control ("DNREC"), there being no applicable Sussex County zoning ordinance. As previously indicated, under Article VI, Section 10, any different setback requirements would necessitate an amendment to the Declaration of Restrictions recommended by the ARC and formally approved by the members of the Association. As the subsequent history reflects, although several different proposals for amendments to the Declaration of Restrictions have been put forward, none have been formally adopted by the Association.

The affidavits submitted by the Gressers establish that they relied upon the absence of any restrictions other than those contained in Article VI, Section 10, when they prepared (with the professional assistance of an architect) their building plans and submitted them to the ARC. The Gressers also contacted the Sussex County zoning authority and the DNREC. Approval was received from both, as well as from Mr. Barber, the ARC's representative.

The chronology of events involving the Association's consideration of the 12 foot setback requirement begins with the first annual meeting of the Association on November 9, 1985. At that meeting an amendment to the Declaration of Restrictions was proposed that would permit only open deck construction (but no enclosed areas) within 12 feet of the DNREC dune line. Because there was no quorum, no official vote was taken, although an informal or "straw" vote of the members present resulted in a vote (10 for, 1 against) approving the setback concept.

On January 29, 1986, a rough draft of a proposed amendment to the Declaration of Restrictions incorporating that concept was transmitted by plaintiff's counsel to the Association's President for his review. At the President's request, plaintiff's counsel redrafted the proposed amendment and on February 13, 1986, delivered the revision to the Association's President. On February 26, 1986, the February 13, 1986 draft was then circulated to Association members for their written approval. The February 13 draft differed from the draft that had been circulated at the November 9, 1986 meeting in terms of the specifications for the barriers around the open decks and the distance that second and third level decks could encroach into the 12 foot setback area. It appears that a majority of the lot owners approved the February 13 draft. However, the draft was never formally adopted as an amendment to the Declaration of Restrictions, because it was discovered that the specifications for the decks made the construction of any open decking on the upper living levels technically unfeasible. Accordingly, another draft was prepared, and was forwarded on May 16, 1986, for consideration by the Association. Two weeks later, the ARC adopted the 12 foot setback requirement that was still under consideration by the Association, and voted to disapprove the Gressers' building plans on that basis.

On July 11, 1986, the ARC again met and as a result, further revisions to the proposed amendment were suggested. Those suggestions were incorporated in yet another draft of the proposed amendment dated July 16, 1986. This draft was circulated to the lot owners, together with an explanatory memorandum by plaintiff's counsel, on July 21, 1986, five days after the Association had commenced this action against the Gressers. Although the record reflects that the July 16 draft had been approved by a majority of lot owners, to date no amendment to Article VI, Section 10 of the Declaration of Restrictions has yet been formally adopted or recorded.

## II.

The standards that govern the issuance of a preliminary injunction are well established. Such extraordinary relief will not issue unless the moving party satisfies the Court that there is a reasonable probability that it will ultimately prevail at final hearing on the merits of the claims asserted, that the applicant will be irreparably injured if preliminary injunctive relief is not granted, and that the threat of irreparable injury outweighs the threat to the adverse party of injury that might arise from being wrongfully restrained. *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599 (1974), *aff'd*, Del.Supr., 316 A.2d 619 (1974); *Shields v. Shields*, Del.Ch., 498 A.2d 161 (1985).

The Association's reasoning in support of its claim is easily stated. First, the Association argues that the ARC has broad powers of approval or disapproval of building designs and plans under Article VI, Section 6 of the Declaration of Restrictions. That Section pertinently provides that:

> Section 6. *Approval of Plans and Specifications Required. No building, garage, structure, fence, wall, other improvement, or site work shall be commenced, erected, maintained or used, nor shall any addition to or change or alterations therein, or in the use thereof, be made upon any of the Lots which are the subject matter of this Declaration,* no matter for what purpose or use, *until complete and comprehensive plans and specifications, showing the nature, kind, shape, height, materials, floor plans, exterior architectural scheme, location and frontage on the Lot, approximate cost of such building, structure, or other erection, and the grading and landscaping of the Lot to be built upon or improved, shall be submitted to and approved in writing by the Association, through its duly designated Architectural Review Committee,* its successors, or assigns, and until a copy of all such plans and specifications, finally approved as aforesaid,

shall be lodged permanently with the Association, its successors or assigns, providing that nothing herein shall require the aforesaid approval as to interior decorations, alterations or changes. *The Association, its successors and assigns, shall have the right to refuse approval of any such plans or specifications, or grading or landscaping plans or changes, which are not suitable or desirable in its or its successors opinion, for aesthetic or other reasons. In passing upon such plans and specifications, or grading and landscaping plans, the Association, its successors or assigns, shall have the right to take into consideration the suitability of the proposed building or improvements or erections and/or the materials of which the building or other improvements or erections are to be built and the site upon which it is proposed to be erected and used, the harmony thereof with the surroundings and the effect of such improvements, additions, alterations or changed use, as planned, on the outlook from the adjacent or neighboring property, and any and all factors which in its opinion would affect the desirability or suitability of such proposed improvements, erections, or alteration or change....*" (emphasis added)

The Association claims that it has the power, through the ARC, to impose the 12 foot setback restriction—even without amending the setback restriction provisions of Article VI, Section 10—under its power conferred by Article VI, Section 6, to

> "refuse approval of any such plans or specifications ... which are not suitable or desirable ... for aesthetic or other reasons.... [taking into consideration] ... the suitability of the proposed building ... and/or the materials ... and the [building] site ... the harmony thereof with the surroundings and the effect of such improvements ... as planned, on the outlook from the adjacent or neighboring property, and any and all factors which in its opinion would affect the de-

sirability or suitability of such proposed improvements...."

The Association contends that given the breadth of the ARC's reviewing power under Article VI, Section 6, all that is required of the ARC is that it exercise its power in a non-arbitrary, reasonable manner. The Association concludes that because the lot owners have manifested on two separate occasions a "community consensus" that the 12 foot setback restriction is desirable, *a fortiori*, the ARC's application of that standard to the Gressers was reasonable.

In response, the Gressers contend that the ARC had no power under Article VI, Section 6 to impose any setback requirement that is inconsistent with the provisions of Article VI, Section 10. They argue that since the 12 foot setback requirement was inconsistent, it could not be created or imposed other than by a formal vote of Association members approving the requirement as an amendment to the Declaration of Restrictions—an event that admittedly has never occurred. Alternatively, the Gressers contend that even if the ARC had the power to impose the 12 foot setback requirement, the application of that requirement to them was arbitrary and unreasonable, because it was accomplished without prior notice and also because it was applied selectively to the Gressers but not to other beachfront property owners. The Gressers further contend that the ARC was not lawfully and properly constituted and also that the Association is guilty of laches.

For the reasons that follow, I conclude that the Association has failed to establish the likelihood that it will prevail on the merits of its claims at final hearing.

### III.

Under Delaware law, it is legally permissible for a restrictive covenant to condition the right of a lot owner to make improvements on his or her lot in a planned subdivision or development, upon the prior approval of the developer, an association of lot owners, or a designated committee or representative of either. The delegation of so-called "architectural review" powers to a committee is a practice commonplace in Delaware and throughout the country. However, architectural review is suspect due to its tendency to be arbitrary, capricious, and therefore unreasonable. Consequently, Delaware law mandates that the architectural review function must be done reasonably and that any doubts as to its reasonableness must be resolved in favor of the landowners. *Chambers v. Centerville Tract No. 2 Maintenance Corporation*, Del.Ch., C.A. No. 7144, Hartnett, V.C. (May 30, 1984); *Edgemoor Terrace Civic Ass'n v. Spinning Wheel Inn*, Del.Ch., 256 A.2d 284 (1969); *Alliegro v. Home Owners of Edgewood Hills*, Del.Ch., 122 A.2d 910 (1956).

In this case, the principle of strict construction, as well as basic principles of contract interpretation, forbid what the Association is seeking to achieve here. Article VI, Section 10 of the Declaration of Restrictions, which specifically addresses the subject of setbacks, expressly states that the adoption of setback requirements other than those imposed by the Sussex County Zoning Code must be accomplished by a formal amendment to the Declaration. That requires a recommendation by the ARC and the approval of the requisite number of Association members. No such amendment has ever been enacted. The Gressers argue that the 12 foot setback standard is invalid as a matter of law, because an architectural review committee cannot, under its review power, create setback requirements more burdensome than those specifically stipulated in the restrictions of record. Several jurisdictions adhere to that view (*see, e.g., Bass v. Helseth*, Cal.App. 116 Cal.App.2d 75, 253 P.2d 525 (1953); *Davis v. Huey*, Tex.Supr., 620 S.W.2d 561 (1981); *Levin v. Mountain Farms, Inc.*, Conn. 22 Conn.Sup. 14, 158 A.2d 493 (1959), and the Gressers urge that it be adopted here. While that rule has

much to commend it, this case may be decided upon a more narrow ground.

Two salutary principles of construction compel the result reached in this instance. The first is that a contract must be construed as a whole, giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless. *Hudson v. D & V Mason Contractors, Inc.*, Del.Super., 252 A.2d 166 (1969); *In Re Farm Industries, Inc.*, Del.Ch., 196 A.2d 582 (1963); *Wooleyhan v. Green*, Del.Super., 155 A. 602 (1931); *1010 Potomac Associates v. Grocery Manufacturers of America, Inc.*, D.C.App., 485 A.2d 199 (1984). That principle is implicated here because the legal force of the restrictive covenants that bind the Seabreak lots is contractual in nature. *Parker v. Hough*, Pa.Supr., 420 Pa. 7, 215 A.2d 667 (1966); *Haskell v. Gunson*, Pa.Supr., 391 Pa. 120, 137 A.2d 223 (1958). To hold (as the Association urges) that the ARC has power under Article VI, Section 6 to impose inconsistent setback restrictions—the same power that is expressly denied to the ARC and reserved to the lot owners under Article VI, Section 10—would effectively read Article VI, Section 10 out of the Declaration. If such is to be the result, then Article VI, Section 6 should, at the very least, contain language sufficiently explicit and precise to demonstrate that such a result was intended by the authority that promulgated the Declaration of Restrictions, in this case the developer. Stated differently, if the ARC is to be deemed empowered to adopt under one restrictive covenant a setback requirement that could be adopted only by the Association's members under a separate covenant, then such power must be clearly and explicitly conferred. In this case, neither Article VI, Section 6 nor any other provision explicitly or clearly confers any such power upon the ARC.

Nor, given the rule requiring strict construction of covenants restricting the free use of property, can such power be judicially implied from the language of Article VI, Section 6. The Association argues that under cases such as *Alliegro v. Home Owners of Edgewood Hills, supra,* and *Hollingsworth v. Szczesiak,* Del.Ch., 84 A.2d 816 (1951), the ARC's power to adopt the 12 foot setback restriction is implicit in the broad grant of authority found in Article VI, Section 6, particularly the clause permitting the ARC to consider the impact of any proposed building upon the "outlook" from adjacent or neighboring properties. 'Our case law, however, indicates precisely to the contrary.

To the extent that a committee is empowered to pass on plans and specifications to determine whether a proposed building conforms to a general plan of development or conforms to restrictions that are clear, specific, and reasonable (*e.g.*, specific restrictions detailing minimum cost, setback, side spaces and the like) such a grant of power is normally enforceable. However, where the language used in the restrictive covenant empowering the committee is overly vague, imprecise, or so unclear as not to lend itself to evenhanded application, then the grant of authority is normally not enforceable. *Alliegro v. Home Owners of Edgewood Hills, supra,* 122 A.2d at 912, *Edgemoor Terrace Civic Ass'n v. Spinning Wheel Inn, supra,* 256 A.2d at 287, *Hollingsworth v. Szczesiak,* Del.Ch., 84 A.2d 816, 821 (1951). By way of example, in *Alliegro, supra,* this Court questioned, and in *Chambers v. Centerville Tract No. 2 Maintenance Corporation, supra,* this Court held unenforceable, a restrictive covenant empowering a committee to disapprove building plans which were not desirable "for aesthetic or other reasons...." In *Chambers,* Vice Chancellor Hartnett found that the power to reject plans for purely aesthetic reasons would by its very subjective nature be "arbitrary or capricious and therefore ... not reasonable." Similarly, in *Edgemoor Terrace, supra,* then-Vice Chancellor Marvel found that a restrictive covenant prohibiting a "noxious or offensive trade" on a lot that "may be or become an annoyance or nuisance to the neighborhood", was too broad and imprecise to be independently enforceable.

Much of the language of Article VI, Section 6 relied upon by the Association, insofar as it delegates review power to the ARC, is of the same imprecise, vacuous nature as that found overly broad and unenforceable in *Alliegro* and *Edgemoor Terrace*. In particular, the term "outlook" has no built-in, objective standards that would enable it to be applied in an evenhanded manner or to be used as a guideline by lot owners in designing their residences. The term certainly does not convey a precise or specific meaning that would evidence that the developer intended to empower the ARC to adopt building setback requirements inconsistent with those expressly created and set forth in Article VI, Section 10. Under the rule requiring strict construction of covenants restricting the free use of property, Article VI, Section 6 cannot fairly or properly be interpreted to confer upon the ARC a power to adopt setback restrictions inconsistent with those set forth in the recorded Declaration of Restrictions.

In short, I find no merit to the Association's position that the ARC had the power under Article VI, Section 6 to adopt the 12 foot setback restriction that it is attempting to enforce against the Gressers in this action.

The Association has failed to establish its likelihood of success on the merits for a second, independent reason. Even if the ARC is assumed to have validly possessed the authority to adopt the 12 foot setback standard, its exercise of that power in this particular case must be reasonable and not arbitrary. *Alliegro v. Home Owners of Edgewood Hills, supra; Chambers v. Centerville Trust No. 2 Maintenance Corporation, supra; Edgemoor Terrace Civic Ass'n v. Spinning Wheel Inn, supra.* For the reasons now discussed, it must be concluded that the manner in which the ARC has attempted to apply the setback requirement to the Gressers is arbitrary and not reasonable.

■ Covenants requiring that building plans be submitted to a committee and that the committee give its prior consent before construction can begin, are valid if they furnish adequate notice of the specific restriction sought to be enforced. *Davis v. Huey, supra,* 620 S.W.2d at 566. This is because fundamental fairness requires that a property owner be given notice, whether written or *de facto*, of the specific requirements to which the building plans must conform for those plans to receive the committee's approval. *See, Prestwick Landowners' Association v. Underhill,* Ohio App., 69 Ohio App.2d 45, 429 N.E.2d 1191, 1195 (1980); *cf., Hollingsworth v. Szczesiak, supra,* 84 A.2d at 820. In this case, although the Gressers had notice that the Association was considering a proposal to adopt the 12 foot setback requirement as an amendment to the recorded Declaration of Restrictions, they did not have notice, either when they purchased their lot, or when they designed the house, or when they submitted those plans to Mr. Barber or to the ARC, that the 12 foot setback standard would be a requirement to which their proposed residence would have to conform. Not until the ARC formally notified the Gressers that their proposed building plans were being rejected was notice thereby given that the ARC had adopted the 12 foot setback requirement and, at the same time, applied it to the Gressers.[2]

Thus the Gressers, acting under a reasonable but incorrect belief that the only setback restrictions to which they would be subjected were those set forth in Article VI, Section 10 of the Declaration of Re-

---

**2.** In its Memorandum, the Association suggests (at p. 7) that the Gressers did have prior notice, because on March 21, 1986, the ARC approved plans for the Neil house on Lot 5 "... applying the twelve (12) foot setback standard ... in its deliberations." The factual support for this assertion is found in a conclusory statement in the Affidavit of Douglas Parsons, Chairman of the ARC. However, in his deposition, Mr. Parsons testified that the ARC first adopted the standard when it reviewed the plans for the Gresser house (Parsons Dep., p. 111). Moreover, the Association's counsel represented at oral argument that the 12 foot setback standard was first adopted when the ARC reviewed the Gressers' plans. Accordingly, the contention that the Gressers had prior notice is without factual support.

strictions, were induced to invest $365,000 to purchase their lot, and to incur significant architectural expense to design their residence, without being told of a critical setback requirement that would become the basis for rejecting their plans. Consequently, the Gressers were not afforded an opportunity to consider whether, in light of that requirement, such an investment and such expenses were worth making and incurring.

■ Under those circumstances, to permit the ARC to apply the 12 foot setback requirement to the Gressers without having given them prior notice would be arbitrary and unreasonable. On that ground as well, the Association has failed to establish a likelihood of ultimate success on the merits of its claim.[3]

\*　　\*　　\*

For the foregoing reasons, the plaintiff's motion for a preliminary injunction is denied. IT IS SO ORDERED.

3. In view of this preliminary disposition of the merits of the Association's claim, it is unnecessary to (and I do not) consider the Gressers' other challenges to the setback provision, their defense of laches, or the issues of irreparable harm and the balancing of hardships.