## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| Canal Corkran Homeowners Association, Inc., a Delaware non-profit corporation, | ) ) | C.A. No. 10562-MA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Joseph Petrone, | ) | |
| Defendant. | ) | |

## MASTER'S REPORT

Date Submitted:  July 26, 2016
Draft Report:  October 31, 2016
Final Report:  April 21, 2017

A homeowners association is seeking to compel a property owner to remove a crushed oyster shell driveway that was installed after the community's architectural review committee approved construction plans for the property which called for an asphalt driveway.  The property owner has refused to remove the crushed shells and claims that (a) his driveway meets the standards of the restrictive covenant requiring driveways to have solid surfaces, and (b) the architectural review committee failed to follow its own procedures and denied him due process.  For the reasons that follow, I recommend that the Court order the property owner to remove the crushed oyster shell driveway and install an asphalt driveway or apply to the architectural review committee to install a driveway with materials specified in the pertinent restrictive covenant.

In 2001, a subdivision called Canal Corkran was established near Rehoboth Beach, Delaware.[1] It consists of single family homes, duplexes, and townhomes.[2] Under the Declaration of Covenants, Conditions, Easements and Restrictions for Canal Corkran, an association known as the Canal Corkran Homeowners Association, Inc., ("the Association") was "formed to operate, maintain and ultimately own the Common Property; to perform, administer and enforce the covenants, conditions, easements, restrictions and other provisions set forth in these Restrictions, any Rules and Regulations promulgated by the Association, and any Traffic Regulations promulgated by the Association."[3] The Association is responsible for "the management, maintenance and operation of the Common Property and any Association Property," including "all streets, curbs and gutters within Canal Corkran," and "private open space areas (also referred to as 'Park Areas') and storm water management areas as shown on the Record Plot, and all related facilities."[4] The Association acts through its Board of Directors ("Board"),[5] but all matters requiring a

---

[1] Ex. 2.
[2] Townhomes are condominium units, but the owners of townhomes are also members of the homeowners association under Article 2 of the Declaration of Covenants, Conditions, Easements and Restrictions for Canal Corkran ("Declaration"). Ex. 2.
[3] Art. 3.1of the Declaration.
[4] Arts. 5.3.1 & 5.3.2 of the Declaration.
[5] Arts. 4.4, 4.5 & 7.1 of the Declaration.

vote of the Association require the affirmative vote of a majority of Class A members.[6]

Canal Corkran has an Architectural Committee ("ARC") that was created "for the purpose of establishing and enforcing criteria for the construction and maintenance of Improvements within Canal Corkran."[7] Owners of properties in the subdivision are responsible for all maintenance and repair of their properties, including the residences thereon, subject to the approval of ARC.[8] The ARC consists of a minimum of three to a maximum of five property owners in Canal Corkran.[9] However, it is the Board who has the authority and standing to enforce ARC's decisions in a court of competent jurisdiction.[10] No construction and no improvements may be made on any lands within Canal Corkran without the prior written approval of ARC.

The restrictions regarding the general building requirements for residences in Canal Corkran are quite extensive. They cover building materials, the size of a residence, garages and accessory buildings, building setbacks, sidewalks, steps, and

---

[6] All owners of a property in Canal Corkran, except the Declarant, are Class A members. The Declarant is a Class B member, and its membership terminates when the Declarant ceases to own any properties in Canal Corkran. Art. 3.3 of the Declaration.

[7] Art. 1.2 of the Declaration.

[8] Arts. 5.1 & 5.7 of the Declaration.

[9] Art. 8.2.1 of the Declaration.

[10] Art. 8.2.2 of the Declaration.

driveways, among other items.[11]  However, ARC is authorized to grant variances from any of the provisions of the restrictions when:

> circumstances such as topography, natural obstructions, hardship, location of property lines or where aesthetic or environmental considerations so require, but only in accordance with duly adopted Rules and Regulations.  Such variances may only be granted, however, when unique circumstances dictate and no variance shall (a) be effective unless in writing; (b) be expressly contrary to the restrictions set forth in these Restrictions; or (c) prevent the Architectural Committee from denying a variance in other circumstances.[12]

On March 8, 2013, Defendant Joseph Petrone purchased a lot in Canal Corkran.[13] On June 18th, Petrone submitted a "Canal Corkran Architectural Review Application" to ARC.[14]  Petrone was seeking to build a two-story residence approximately 4900 square feet in size.  According to his trial testimony, Petrone's builder filled out the application, but Petrone signed it.[15]  By signing this document, Petrone was acknowledging that he had received and read a copy of the Canal Corkran restrictions and covenants, the ARC approval process and review requirements, and the Canal Corkran Contractor and Property Owner Code of Conduct.  The five-page application required the applicant to provide detailed information concerning the proposed builder, architect, building dimensions, setbacks, square footage, siding, foundation, windows, doors, shutters, roof, patios,

---

[11] Art. 8.2.8 of the Declaration.
[12] Art. 8.2.7 of the Declaration.
[13] Ex. 1.
[14] Ex. 5.

decks, front steps, walkways, driveway, landscaping and tree plan, fences and walls. Paragraph 15 of the application required Petrone to describe the material(s) and color(s) of his proposed driveway and to submit samples or pictures for ARC to review if other than concrete or asphalt. Petrone's application listed "asphalt" as the material to be used for his driveway. In Paragraph 16, a handwritten notation indicated that Petrone's landscape and tree plan would be submitted for review on July 13, 2014.[16] At the bottom of the first page of Petrone's application was the word "IMPORTANT" in bold letters, followed by this notation:

> Please Note: Property Owner must notify the Canal Corkran Architectural Committee of any intended changes to be made to the approved construction plans or to any of the information provided on this application. Additionally, Property Owner shall not proceed with any intended changes until they receive written approval from the Architectural Committee.[17]

In November 2013, Petrone requested a variance to construct a covered porch/gazebo within the 30-foot front yard setback.[18] Petrone's request was denied by ARC on November 16th, and in an email dated November 19th, Petrone asked ARC to reconsider his request.[19] After receiving no response to this request, Petrone emailed the members of ARC and Canal Corkran's property manager, Julie Banks,

---

[15] Trial Transcript ("TT") 172.

[16] In fact, the landscape plan was not submitted until April 30, 2014, and ARC approved the plan on May 13, 2014. Ex. 10 (b) & (c); Ex. 11 (s) & (t).

[17] Ex. 4

[18] Ex. 11(n).

[19] Ex. 11(n) & (p).

asking how to appeal ARC's decision. Banks responded by stating that Petrone would have to request an appeal in writing within 48 hours of the next meeting of ARC, which was scheduled to take place on December 14th, and she attached to her email a copy of the guidelines.[20] On December 11th, Petrone emailed his request for "an audience" with ARC to review their decision regarding the gazebo extension.[21] The meeting took place on December 14th, and by letter dated December 17th, Petrone was informed that his appeal had been denied.[22]

In June 2014, ARC inspected Petrone's house for compliance in anticipation of releasing his construction deposit. Following the inspection, in a letter dated June 10th, Banks asked Petrone to inform the Board and ARC when the asphalt driveway "specified in [Petrone's] plans" would be completed so they could arrange for a final inspection.[23] Petrone responded to Banks on June 12th, stating that the home was complete and that the landscape plans approved by ARC reflected an "oyster driveway versus asphalt."[24] On June 16th, Banks forwarded ARC's response to Petrone's email, requesting that Petrone install the asphalt driveway or, if he desired

---

[20] Ex. 11 (p).
[21] *Id.*
[22] Ex. 11(o).
[23] Ex. 11(z).
[24] Ex. 11(aa).

to substitute asphalt with an alternate hard surface, to submit a request to ARC for approval.[25]  Petrone then responded:

> I am not sure how I missed that.  Please note the driveway is not crushed stone it is Oystershell.  The use of Oystershell architecturally goes with the house style, to replace with asphalt would make it aesthetically incorrect, less eco friendly and very unattractive.  Please advise of appeals process. I am at the home this Saturday if someone from the HOA wants to conduct the walk through.[26]

After hearing nothing further from Petrone, ARC transferred the matter to the Board for enforcement on July 22nd.[27]  On behalf of the Board, Banks sent a letter to Petrone, asking him to install the asphalt driveway or to submit a request for an alternate hard surface to ARC.[28]  By letter dated August 3rd, Petrone and his spouse asked ARC to consider a variance to allow the crushed shell to remain.  They listed the following reasons for a variance:  (a) the architectural and design integrity of a shell driveway with the house, which evokes the coastal charm typical of small coastal towns such as Cape Cod and the Hamptons;  (2) the positive environmental impact of crushed shell since the porous material promotes groundwater replenishment from rainfall; (3) the financial burden to the owner because the removal and replacement of the driveway with a hard surface would require redesigning the entire front yard landscaping and irrigation system to soften the

---

[25] Ex. 11(cc) & (dd).
[26] Ex. 11(cc).
[27] Ex. 11(ff).

appearance of the property; and (iv) the failure of the Board and ARC to request driveway specifications from an owner who was unaware of the requirement of a concrete, asphalt or brick surface.[29]

On August 11, 2014, the Board responded by informing Petrone that ARC had denied his request for a variance for a "shell driveway," and asked Petrone to submit for approval a request for a solid surface driveway by September 1st.[30] On August 31st, Petrone and his spouse responded by saying they felt "singled out' by a Board that previously had allowed other variances in cases where compliance would have caused financial hardship, and they again asked ARC to revisit its decision in light of the financial hardship redoing the driveway would cause Petrone.[31] On September 3, 2014, ARC responded to the Board; ARC was adamant that no variance be granted for this driveway.[32]

Over the course of next few months, the Board asked Petrone to comply with the restrictive covenant to no avail. On January 20, 2015, the Board filed its complaint to enforce deed restrictions under 10 *Del. C.* § 348.[33] A mandatory mediation hearing took place, but no agreement was reached by the parties.[34] A one-

---

[28] Ex. 11(ee).
[29] Ex. 11(hh).
[30] Ex. 11(ii).
[31] Ex. 11(jj).
[32] Ex. 11(kk).
[33] Docket Item ("DI") 1.
[34] DI 9.

day trial was held on April 14, 2016.[35]  This is my draft report following post-trial briefing.

## The Issues

The Board argues that Canal Corkran's restrictive covenants are clear, unambiguous, and reasonable.  They inform the property owners of the building restrictions and the approval process that requires them to apply to ARC before making any improvements to their lots.  Petrone himself followed the process, and on two separate occasions applied to ARC, first, to construct his house and, second, to install his landscaping.  Both of his plans were approved. By seeking a variance, Petrone has acknowledged that the crushed oyster shell driveway does not comply with the deed restriction limiting driveway materials to a solid surface made of concrete, asphalt or brick.

The Board also argues that the driveway restriction is enforceable and has not been waived.  Several current and past members of the Board and ARC testified that there is no other crushed oyster shell driveway among the more than 200 homes in Canal Corkran.  Although Petrone points to one driveway that contains concrete turf pavers, the owner of this property had received approval from ARC before installing concrete turf pavers that were described as "completely solid and stable."[36] Petrone also cited a few instances when so-called variance fees were exacted after houses

---

[35] DI 22.

were constructed in excess of the restrictive covenant's limit of 4200 square feet or, in one case, after a setback violation occurred, all of which were subsequently refunded by the Board. Nevertheless, the Board argues that these incidents do not represent the type of "widespread general pervasive violation" that would result in the waiver of the restrictive covenants. The Board contends that allowing the oyster shell driveway to remain in place would create irreparable harm because it would deny the other property owners in Canal Corkran the benefit of the social contract afforded to them by the deed restrictions and would set a precedent for similar loose material driveways to be installed in the community. The harm suffered by the community outweighs the harm to Petrone of having to replace his driveway because the cost of replacement is a small fraction of the cost of the construction of the house and less than the weekly rental income he receives from the property.[37]

Petrone argues that the crushed oyster shell driveway meets the solid surface requirement of the restrictive covenant because it is similar to the concrete turf pavers used in another driveway in Canal Corkran. Like the concrete turf pavers, the crushed oyster shell is a hardscape material that becomes very compact over time and is contained within a paver border on the sides and a concrete apron along the street. It supports the movement and parking of cars and has the added benefit of being a

---

[36] TT 63.

pervious surface allowing rain water to recharge. Petrone argues that, notwithstanding the fact that the installation of his crushed oyster shell driveway was not approved by ARC due to the unfortunate circumstance of Petrone's mistaken belief that it had been approved, no harm has occurred because the driveway satisfies the driveway standards of Article 8.2.8(h) of the Declaration.

Alternatively, Petrone argues that if the crushed oyster shell driveway is not permissible under the restrictions, he nevertheless should be granted a variance because ARC did not follow its own due process requirements. He accuses ARC of failing to adhere to the Declaration's requirement of the submission of landscaping plans with the original construction plans "including water management control details to insure there are no unreasonable discharges of water onto adjacent properties."[38] Had ARC done so, Petrone's mistaken belief that his landscaping plan specified sea shell material for the driveway would have been corrected by ARC in a timely fashion. In addition, when Petrone requested a variance for his driveway, ARC failed to follow its own procedures, denied the request not on its merits but because ARC had never approved such a driveway before, and failed to give Petrone an opportunity to be heard on his request for reconsideration. Petrone, therefore, argues that he was denied any semblance of substantive or procedural due process.

---

[37] At trial, Petrone estimated that the cost of removing and reinstalling his driveway would be $10,000. TT 209. He built the house at a cost of $1.4 million and charges $16,000/week to rent the house. TT 210.

Analysis

The owner of a lot subject to deed restrictions is limited in the free use of his property.[39]  This limitation, however, is outweighed by the benefits conferred by restrictive covenants on the community as a whole, i.e., the other homeowners who are desirous of preserving the character and quality of their neighborhood.[40]  As long as the restrictions serve a legitimate purpose and provide sufficient notice as to what constitutes appropriate conduct by the homeowner, they will be upheld. Nevertheless, if the language of a restrictive covenant is so vague that it does not provide "clear, precise, and fixed standards of application,"[41] there is a risk of arbitrary or capricious decision-making by the entity reviewing the homeowner's request.  In such cases, the restriction will be deemed unenforceable by the court.

In this case, there is no dispute that Petrone had record notice of the lot in Canal Corkran being subject to restrictive covenants.[42]  Petrone also acknowledged that he had received and read a copy of the Canal Corkran Homeowners Association's Covenants and Restriction when he signed the ARC application on

---

[38] Art. 8.2.3 of the Declaration.  Ex. 2.
[39] *See Lawhon v. Winding Ridge Homeowners Assoc., Inc.*, 2008 WL 5459246, at 4 (Del. Ch. Dec. 31, 2008).
[40] *Id.*
[41] *Id.* at *5 (quoting *Seabreak Homeowners Ass'n, Inc., v. Gresser,* 517 A.2d 263, 268 (Del. Ch. 1986)).
[42] Ex. 1.

June 18, 2013.[43]  The restrictive covenant in question is found in Article 8.2.8(h) of the Declaration and states:  "Driveways shall be installed to provide a solid surface, constructed of concrete, asphalt or brick.  Gravel driveways are not allowed."[44] Petrone's application to ARC listed asphalt as the material he proposed to use for his driveway.[45]

At trial, Petrone testified that his builder had filled out the application.[46] Petrone's spouse, Shawn Evans, testified that it had always been their intention to have a crushed shell driveway in front of the house.[47]  Nevertheless, by submitting his application to ARC, Petrone demonstrated that he had sufficient notice of what was required of him by the restrictive covenants.  Whether it was through inadvertence, mistake, neglect, or otherwise, Petrone led ARC to believe that he was installing an asphalt driveway, and ARC approved his construction plans for the new house.   It was only after the new house was completed that ARC realized the driveway material was crushed shell, not asphalt.

Petrone's first argument is that the crushed oyster shell driveway meets the solid surface requirement of the restrictive covenant.  Evans testified that the shell

---

[43] Ex. 4.
[44] Ex. 2.
[45] Ex. 4.
[46] TT 172.
[47] TT 113-114.

compacts over time and is considered a hardscape material.[48]  Petrone testified that the crushed shells were compacted and not spongy, but when asked, he did not deny that they were loose.[49]  Maurice Balling, the current president of the Board, testified that he videotaped Petrone's driveway on January 30, 2016, about a week after a rain storm.[50]  The videotape, which was played in the courtroom,[51] showed loose material, i.e., some pieces of crushed shell, had migrated from Petrone's driveway into the concrete curb and the street.[52]  This curb functions as Canal Corkran's gutter system for stormwater management.[53]

Petrone argues that the crushed oyster shell driveway is no different from the concrete turf paver driveway installed by Claudia Wiegand,[54] which was approved by ARC prior to its installation.  According to Petrone, both driveways contain pervious materials yet both still provide a solid surface. Since ARC approved Wiegand's driveway, Petrone contends that an even-handed and non-arbitrary application of the

---

[48] TT 116.
[49] TT 197.
[50] TT 125-126.
[51] Ex. 5.
[52] TT 129.
[53] *Id.*
[54] At trial, Wiegand described her driveway as consisting of two types of concrete pavers.  Starting at the curb, Wiegand had installed eleven feet of solid concrete pavers.  The remainder of Wiegand's driveway is covered with concrete turf pavers that are the same shape and size as the other pavers, but have a cut-out for flora material to be inserted in the center of each paver.  TT 60-63. Ex. 11(g).

standards requires the Court to find that his crushed oyster shell driveway also meets the parameters of the restrictive covenant.

In making this argument, however, Petrone focuses only on the first portion of the restrictive covenant, i.e., "driveways shall be installed to provide a solid surface[.]" Looking at Article 8.2.8(h) in its entirety and giving the chosen words their plain and ordinary meaning,[55] there is only one reasonable understanding of "[d]riveways shall be installed to provide a solid surface, constructed of concrete, asphalt or brick. Gravel driveways are not allowed." That is, not only must driveways in Canal Corkran be installed to provide a solid surface, as opposed to loose aggregate material, but they must also be constructed of concrete, asphalt or brick. Wiegand's driveway is constructed of concrete pavers, some of which encircle discrete patches of turf. Petrone's driveway is constructed of crushed oyster shells. Although the shells may compact over time, they are still loose and have the potential to be disturbed and migrate into the curb and street, as the videotape demonstrated. In contrast, Wiegand's concrete pavers, including the concrete turf pavers, are not loose.

The Association is responsible for maintaining the streets and stormwater managements systems in Canal Corkran. A covenant requiring driveways to have

---

[55] *Pues v. Simpson*, 2009 WL 1451853, at *2 (Del. Ch. May 26, 2009). *See also, Lawhon*, 2008 WL 5459246, at *6 ("A document is not ambiguous merely because

solid surfaces constructed of concrete, asphalt or brick is a reasonable restriction on the individual homeowner's property rights. Hence, this restrictive covenant is enforceable. Since Petrone's crushed oyster shell driveway does not meet the parameters of Article 8.2.8(h), I find that Petrone is in violation of the restrictive covenant.

Petrone also argues that he is entitled to a variance because he was denied procedural and substantive due process when ARC failed to follow its own standards and procedures in addressing his variance request. Petrone cites ARC's failure to follow the Declaration provision requiring the submission of a landscaping plan in conjunction with the construction plan,[56] and argues that a timely review of the two plans together might have revealed to Petrone his own mistaken belief that the landscaping plan specified a sea shell driveway. First, it was Petrone who held the mistaken belief that his landscape plans included specifications for the driveway, not ARC. Second, Article 8.2.3 of the Declaration, as amended, permits ARC to agree to a later review of landscaping plans, such as occurred here, presumably, at Petrone's request.[57] Finally, while an earlier review of the landscaping plan might have saved Petrone the expense of installing a crushed oyster shell driveway, it does not follow that he should have been granted a variance after installing his driveway. ARC may

---

the parties do not agree as to its interpretation.")(citing *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).
[56] Art. 8.2.3 of the Declaration. Ex. 2

only grant a variance "when unique circumstances dictate and no variance shall … be expressly contrary to the restrictions[.]"[58] Petrone's crushed oyster shell driveway is expressly contrary to the restrictions.

Petrone also contends that ARC ignored the issue of water management control and thereby failed to consider the beneficial impact of a permeable surface like a sea shell driveway.[59] He contends that ARC insists on an asphalt driveway without first demonstrating that it has considered the adverse impact an impermeable surface like asphalt would have on adjacent properties. Since ARC previously approved Petrone's construction and landscaping plans with the understanding that he was installing an asphalt driveway, one presumes that ARC had assessed the impact an impermeable surface like asphalt would have on the adjacent properties, and found it to be non-existent or negligible.

Petrone also contends that the Board and ARC were inconsistent in their process of addressing his current variance request compared to their process in addressing his earlier request for a variance from the front setback requirements. On the prior occasion, after Petrone requested an appeal from the denial of his variance request, he had an opportunity to be heard by ARC so "fundamental due process was

---

[57] Art. 8.2.3 of the First Amendment to the Declaration. Ex. 3.
[58] Art. 8.2.7 of the Declaration. Ex. 2.
[59] Art. 8.2.3 of the Declaration states in pertinent part: "Landscaping plans must be submitted with original construction plans for Residences, including water-

at least respected."[60]   This time, after receiving a demand for the removal of his driveway, he sought advice on the appeal process to no avail, and then ARC transferred the matter to the Board for enforcement without any notice to Petrone. Thereafter, the Board had to refer the matter back to ARC to consider Petrone's variance request, but ARC's denial was not based on the merits, according to Petrone. Instead, ARC denied his request because ARC had never approved a driveway surface that was not asphalt, brick/paver or concrete.   Petrone points to emails documenting ARC's review of his variance request as evidence that he was denied "any semblance of procedural or substantive due process."[61]   Finally, Petrone argues that he was treated very differently by ARC compared to another homeowner who also had been cited for a non-conforming driveway.

A review of the evidence at trial reveals that there were ongoing communications among the parties, i.e., Petrone, ARC, and the Board, over the course of several months, with the property manager serving as the conduit of these communications.   The outcome should have come as a no surprise to Petrone.   His driveway is the only crushed shell driveway in Canal Corkran; it is the only driveway

---

management control details to insure there is no unreasonable discharge of water onto adjacent properties."  Ex. 2.
[60] Post-Trial Answering Brief of Defendant, at p. 39.  DI 31.
[61] *Id.*

whose surface is not constructed of concrete, asphalt, brick or some sort of paver.[62]  It is understandable and reasonable that, given the restrictive covenants, ARC did not want to set a precedent by granting Petrone's variance request that other homeowners might cite in support of their requests to surface driveways with loose materials.  Furthermore, ARC is a private entity that is not subject to the Fourteenth Amendment, and enforcement of this driveway restrictive covenant does not involve the Court in enforcing a racist or other invidious covenant.[63]

Petrone's final argument appears to be a complaint about disparate treatment by ARC.  Petrone received a demand to install an asphalt driveway while another homeowner received a polite request to submit a revised plan for their driveway.  Although Petrone acknowledges that the two cases differ in scope, he argues that the scope of ARC's treatment should not.  Petrone's argument makes little to no sense.  Petrone's driveway has been a continuing violation of the restrictive covenant while

---

[62] At the request of the parties, I personally observed the driveways in Canal Corkan.  As I drove through the subdivision, I saw driveways that varied somewhat in design, shape, color, and texture, but the materials used were either concrete, asphalt, pavers, or brick, with one possible exception, a driveway that appeared to be paved with field stone, or blue stone.  Even this driveway was not very different visually from the other driveways.  Petrone's driveway with its white crushed oyster shells, on the other hand, was visually quite distinct, and stood out from the other driveways.

[63] *Dolan v. Villages of Clearwater Homeowner's Ass'n*., 2005 WL 2810724, at n. 12 (Del. Ch. Oct. 21, 2005) (citing *Tansey-Warner, Inc. v. East Coast Resorts, Inc.,* 1978 WL 22460 (Del. Ch. Nov. 27, 1978)).

the other homeowner's driveway never violated the restrictive covenant.[64] Enforcement is warranted in Petrone's case, but not in the other.

## Conclusion

I have reviewed Defendant Joseph Petrone's exceptions to the Draft Report. I see no reason to modify my recommendations that the Court order Petrone to remove the crushed oyster shell driveway and install an asphalt driveway or, in the alternative, to apply for a driveway of another material that complies with Article 8.2.8(h) of the Declaration, and award the Association reasonable costs and expenses, including reasonable attorney's fees under 10 *Del. C.* § 348(c). The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[64] Wiegand testified that the shape of the other driveway as constructed did not match the depiction that had been submitted with the homeowner's application. As a matter of "recordkeeping cleanup," ARC asked that the application be revised to accurately reflect the driveway's shape. TT 65-66.