**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted: April 7, 2021
Draft Report: May 19, 2021
Final Report: June 3, 2021

Gary R. Dodge, Esquire
Curley, Dodge, Fitzgerald & Funk, LLC
250 Beiser Boulevard, Suite 202
Dover, Delaware 19901

Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 South Governors Avenue
Dover, Delaware 19904

RE: *Wild Quail Golf & Country Club Homeowners' Association, Inc. v. Mark Gary Babbitt and Lucienne Carter Babbitt*
C.A. No. 2019-0768-PWG

Dear Counsel:

Pending before me is an action by a homeowners' association to enforce deed restrictions under 10 *Del. C.* §348. The homeowners constructed an addition to their house, which the association alleges violates the deed restrictions because the color of the addition's roof did not conform to the plans submitted to the association, or to the conditional approval granted by the association. I recommend the Court deny the homeowners' motion for summary judgment because there are material facts in dispute concerning whether the association applied the deed restrictions' standard reasonably in imposing its conditional

approval, and it is desirable to inquire more thoroughly into the facts to clarify the

application of the law to the circumstances. This is a final report.[1]

## I.  Background

On September 23, 2019, Plaintiff Wild Quail Golf & Country Club

Homeowners' Association, Inc. ("the Association") filed a complaint against

Defendants Mark and Lucienne Babbitt ("the Babbitts") asserting that the Babbitts

violated the Wild Quail Golf & Country Club development ("Wild Quail")'s

Declaration of Restrictions ("Restrictions") related to the addition ("Addition")

they built on their property ("Property") located at 57 Teal Lane, Camden-

Wyoming, Delaware.[2] Prior to building the Addition, the Babbitts submitted plans

for the Addition to the Association's Architectural Committee ("AC") as required

by the Restrictions, including drawings dated March 7, 2018.[3] On March 10, 2018,

the AC sent an email to the Babbitts and their contractor entitled "Final approval,"

which imposed a number of conditions as a part of its approval, including the

condition at issue here – that "[t]he roof color must match as closely as possible to

the existing metal roof on the residence" ("Roof Condition").[4] The Association

---

[1] This report makes the same substantive findings and recommendations as my May 19, 2021 draft report, to which no exceptions were filed.

[2] Docket Item ("D.I.") 1.

[3] *Id.*, ¶ 12; Ex. E.

[4] *Id.*, Ex. F.

argues that the roof on the Addition, as constructed, fails to conform to its conditional approval or to the Addition's plans, which depicted a dark color roof.[5] The Association asks that the Court direct the Babbitts to modify the addition to conform to the conditional approval, and award attorneys' fees under 10 *Del. C.* §348.

On October 22, 2019, the Babbitts filed an answer denying the Association's claims and seeking judgment in their favor and attorneys' fees.[6] The case was dismissed on December 21, 2020 for lack of prosecution.[7] The Association's January 20, 2021 motion to reopen the case was granted on January 27, 2021.[8]

On March 2, 2021, the Babbitts filed a motion for summary judgment contending that the Association has not met its burden of proof regarding the applicable Restrictions' enforceability and the reasonableness of the AC's actions.[9] The Association's April 1, 2021 response claims that color is an essential aspect of

---

[5] *Id.*, ¶¶ 12, 13, 15.

[6] D.I. 5.

[7] D.I. 9.

[8] D.I. 14.

[9] D.I. 17, Resp'ts' Opening Br. in Supp. of its Mot. for Summ. J. ("Resp'ts' Opening Br."), at 11; D.I. 20, Resp'ts' Reply Br. in Supp. of its Mot. for Summ. J., at 2-3.

architectural review, and that the Babbitts defied the Restrictions by failing to abide by the architectural review process.[10]

## II. Standard for Review

Under Court of Chancery Rule 56, the court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[11] The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[12] Once the moving party has satisfied that burden, it falls on the non-moving party to show that there are factual disputes. Evidence must be viewed "in the light most favorable to the non-moving party."[13] Summary judgment may not be granted when material issues of fact exist

---

[10] D.I. 19, Pet'r's Answering Br. in Opp'n to Resp'ts' Mot. for Summ. J. ("Pet'r's Answering Br."), at 3-4, 29-31.

[11] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Pine River Master Fund Ltd. v. Amur Fin. Co., Inc.*, 2017 WL 4023099, at *6 (Del. Ch. Sept. 13, 2017) (citation omitted); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[12] *Cain v. Sussex Cty. Council,* 2020 WL 2122775, at *6 (Del. Ch. May 4, 2020); *Dieckman v. Regency GP LP*, 2019 WL 5576886, at *11 (Del. Ch. Oct. 29, 2019) (citation omitted); *Wagamon*, 2012 WL 1388847, at *2.

[13] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)); *see also Pine River Master Fund Ltd.*, 2017 WL 4023099, at *6 (citation omitted).

or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[14]

## III.    Analysis

Deed restrictions requiring approval of an association, or its architectural committee, before a homeowner can erect a structure on her property, are enforceable if they articulate "a clear, precise and fixed standard the reviewing body must apply."[15]  However, such restrictions "are viewed with suspicion due to the tendency of such review to be arbitrary, capricious and therefore unreasonable," and are strictly construed.[16]  If a restriction is "vague, imprecise, or unclear, the grant of authority normally is not enforceable."[17]  And, in reviewing requests under the restrictions, an association or its architectural committee cannot unreasonably withhold approval, and "any doubts as to [the architectural review

---

[14] *Williams*, 671 A.2d at 1388-89; *see also Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

[15] *Benner v. Council of Narrows Ass'n of Owners*, 2014 WL 7269740, at *1 (Del. Ch. Dec. 22, 2014), *adopted,* (Del. Ch. Mar. 16, 2015); *see also Lawhon v. Winding Ridge Homeowners Ass'n, Inc.* [hereinafter "*Lawhon*"], 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008); *Seabreak Homeowners Ass'n, Inc. v. Gresser* , 517 A.2d 263, 269 (Del. Ch. 1986), *aff'd,* 538 A.2d 1113 (Del. 1988).

[16] *Benner*, 2014 WL 7269740, at *7; *see also Tusi v. Mruz*, 2002 WL 31499312, at *3 (Del. Ch. Oct. 31, 2002) ("because [architectural review restrictions] restrict the 'free use of property,' restrictive covenants must be strictly construed").

[17] *Benner*, 2014 WL 7269740, at *7; *Seabreak*, 517 A.2d at 269.

function's] reasonableness must be resolved in favor of the landowners."[18]

Although restrictions "based on abstract aesthetic desirability are impermissible,"[19]

deed restrictions allowing for denial based on lack of visual harmony "can be

upheld if there is a reasoned, non-arbitrary basis for the reviewing authority to

assess whether a proposal would disrupt the visual harmony of the affected

community."[20]

Here, the Babbitts contend that the Restrictions require only that exterior

colors be "soft tones" and that the Roof Condition is arbitrary enforcement.[21] The

Association asserts that the Roof Condition was "clear, objective and consistent

with the AC's commitment to have the exterior of additions match the original

structure."[22] It further asserts that "[c]onsideration of color is essential in

architectural review," and this dispute is "only peripherally about color," because

the Babbitts acted in defiance of the Restrictions by failing to abide by the

architectural review process (by ordering materials before submitting the

---

[18] *Seabreak*, 517 A.2d at 268; *see also Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 2810724, at *4 (Del. Ch. Oct. 21, 2005) ("Under Delaware law, a deed that conditions the right to make improvements on the permission of a developer or Review Board is enforceable but permission must not be withheld unreasonably and the burden is on the Review Board to show its actions are reasonable.").

[19] *Lawhon*, 2008 WL 5459246, at *5.

[20] *Dolan,* 2005 WL 2810724, at *4.

[21] Resp'ts' Opening Br., at 11.

[22] Pet'r's Answering Br., at 26.

Addition's plans, which depicted a darker roof color than as completed, and by rushing the process).[23]

The central issues here are whether the Restrictions provide clear, precise and fixed standards for the AC to apply, and whether the AC acted reasonably in imposing the Roof Condition.[24]

Section 2 of Article II of the Restrictions requires submission of plans for additions on properties in Wild Quail that describe "exterior materials and their color," and receipt of AC approval prior to construction of an addition.[25] The third paragraph in Section 2 ("Third Paragraph") states:

> In passing upon such plans and specifications the Committee may take into consideration the suitability of the proposed building or other structure and of the materials of which it is to be built, to the site upon which it is proposed to erect same, the harmony thereof with the

---

[23] *Id.*, 3-4, 29-31.

[24] The Association argues that the Babbitts' alleged lack of candor and failure to comply with the review process is an important issue in this case. *Id.*, at 3. Because caselaw establishes the approach by which the Court determines whether deed restrictions, and the architectural review committee's decisions, are enforceable, the Babbitt's actions are only relevant if they affected the reasonableness of the AC's review process. And, since there are material issues of fact in dispute whether the AC's conditional approval was reasonably imposed, this claim remains in dispute.

[25] D.I. 1, Ex. A., Art. II, §2. The first paragraph in §2 is inartfully drafted ("No . . . addition shall hereafter be erected, altered or placed on any Lot unless the plans have been approved by the construction or alteration of a building or structure or addition shall submit two (2) sets of plans . . . The Architectural Committee shall approve or disapprove said plans within thirty (30) days of receipt of same"). Reading §2 as a whole, it is evident that the AC is responsible for approving submitted plans.

surroundings and the effect of the buildings or other structure as planned on the outlook from the adjacent or neighboring properties.[26]

"The proper construction of [the operation of] a contract . . . is purely a question of law, as is the proper interpretation of specific contractual language."[27] Interpreting deed restrictions is a matter of contract interpretation and provisions are construed by determining original intent from the plain and ordinary meaning of the words.[28] Under Delaware caselaw, contracts are read "as a whole," "so as not to render any part of the contract mere surplusage," or to "render a provision or term 'meaningless or illusory.'"[29] The Court "ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer."[30] It is well-established that Delaware courts can look to dictionaries for assistance in determining the intended meaning of contract terms.[31]

---

[26] *Id.*

[27] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *10 (Del. Ch. July 6, 2018), *reargument denied,* 2018 WL 5994971 (Del. Ch. Nov. 13, 2018) (internal quotation marks and citations omitted).

[28] *See New Castle Cty. v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 747 (Del. Ch. 2013), *aff'd*, 105 A.3d 990 (Del. 2014); *Benner v. Council of Narrows Ass'n of Owners*, 2014 WL 7269740, at *8 (Del. Ch. Dec. 22, 2014), *adopted,* (Del. Ch. Mar. 16, 2015); *Pues v. Simpson*, 2009 WL 1451853, at *2 (Del. Ch. May 26, 2009).

[29] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citations omitted); *see also Ray Beyond Corp. v. Trimaran Fund Mgmt., LLC*, 2019 WL 366614, at *5 (Del. Ch. Jan. 29, 2019).

[30] *Lawhon*, 2008 WL 5459246, at *6 (Del. Ch. Dec. 31, 2008) (citations omitted).

[31] *Cf. Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("dictionaries are the customary reference source that a reasonable person in the position

Deed restrictions are "construed in accordance with their plain meaning in favor of a grantee [such as a homeowner] and against a grantor [such as a homeowners' association]."[32]

Looking at the plain language of the Restrictions, the Third Paragraph specifies that the AC can consider the "suitability of the proposed building or other structure and of the materials" to the site ["Suitability Standard"] and whether the structure will be harmonious with its surroundings and adjacent or neighboring properties ["Harmony Standard"].[33] The Harmony Standard is similar to standards in other deed restrictions that have been upheld by courts so long as the community possesses a "sufficiently coherent visual style" and the standard is fairly applied based upon that style.[34]

---

of a party to a contract would use to ascertain the ordinary meaning of words not defined in the contract").

[32] *Cf. Serv. Corp. of Westover Hills v. Guzzetta*, 2009 WL 5214876, at *3 (Del. Ch. Dec. 22, 2009) (internal quotation marks and citations omitted).

[33] The Suitability Standard is not at issue here since the AC's approval was conditioned on the Addition's roof color and not on the suitability of the Addition and its materials to the site, or its spatial location.

[34] *Cf. Lawhon*, 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008) (citations omitted) ("[C]ourts regularly enforce architectural review provisions designed to ensure the overall harmony of appearance within a community, when that community possesses a 'sufficiently coherent visual style' enabling fair and even-handed application."); *Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 1252351, at *6 (Del. Ch. May 12, 2005) (holding that actions by an architectural review board "based on purely objective criteria are permissible, actions based on purely subjective criteria (aesthetics) are not"); *Welshire Civic Ass'n, Inc. v. Stiles*, 1993 WL 488244, at *3 (Del. Ch. Nov. 19, 1993); *Point Farm Homeowner's Ass'n, Inc. v. Evans*,

Therefore, AC actions taken under the Harmony Standard may be enforceable if the required conditions are met. The Roof Condition, however, focuses on the color of the Addition's roof and the Harmony Standard does not mention color. Exterior color is addressed in the fifth paragraph of Section 2 of Article II of the Restrictions ("Color Standard"), which provides: "The exterior colors shall be within the group of colors knows[sic] as soft tones. Any other colors must be approved by the Architectural Committee."[35] In other words, the use of soft tones for exterior colors is allowed without the approval of the AC, and AC approval of exterior colors is required only if soft tones are not used.

To be upheld, the Color Standard must present clear, precise and fixed standards of application. I consider the plain and ordinary meaning of "the group of colors know[n] as soft tones."[36] Since soft tones are not defined in the Restrictions, I look to dictionaries for assistance in determining the meaning of soft tones. "Soft" means "not bright or glaring: subdued,"[37] while "tone" is defined as

---

1993 WL 257404, at *3 (Del. Ch. June 28, 1993) (holding that the association acted unreasonably based upon a purely aesthetic judgment, when it rejected the use of vinyl siding by a homeowner as disharmonious with the "predominantly forested" neighborhood).

[35] D.I. 1, Ex. A., Art. II, §2.

[36] *Id.*

[37] *Soft*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/soft (last visited June 1, 2021).

"a tint or shade of color."[38] Considering those together, soft tones mean subdued

tints or shades of colors. Therefore, the Color Standard does not restrict the

color itself but requires that the color not be bright or glaring. This standard can

be applied objectively and is reasonably ascertainable.[39]

However, the Color Standard does not denote a specific standard for the AC

to apply if the exterior color is not a soft tone. Reading Section 2 as a whole, it is

reasonable to conclude that the Restrictions intend that the AC apply the Harmony

Standard when it reviews exterior colors that are not soft tones since, consistent

with other language in Section 2, the AC would be "passing on plans and

specifications" that address color.[40] So, when colors in soft tones are not used, the

AC may evaluate exterior colors based upon whether the colors will harmonize

with surroundings and adjacent or neighboring properties. This interpretation

gives effect to all of the Color Standard's language. In contrast, if the AC

---

[38] *Tone*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/tone (last visited June 1, 2021).

[39] The Babbitts argue that the use of "tone" with "soft" as a modifier "appears to be determined on aesthetic perception." Resp'ts' Opening Br., at 4. I decline to conclude that an AC decision on soft tone colors is, *per se*, based upon purely aesthetical considerations. "An individual's, or a committee's, opinion of what is tasteful does not constitute an objectively fair and reasonably ascertainable standard. Nevertheless, decisions may be influenced by aesthetic considerations while still subject to objective standards." *Lawhon*, 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008). Whether a color is subdued and a soft tone does not need to be based on personal taste and may be decided objectively.

[40] D.I. 1, Ex. A., Art. II, §2.

considers exterior colors in every instance, the Color Standard is rendered meaningless because its automatic approval of soft tones is lost. Therefore, when colors in soft tones are used, exterior colors are not considered as a part of the AC's harmony of appearance analysis. When soft tone colors are not used, exterior colors may be considered under the Harmony Standard. Although complicated, this approach offers clear, precise and fixed standards for the AC to apply.

Next, I consider whether the AC reasonably applied these standards, and whether it concluded that the roof color was not a soft tone as specified in the Color Standard, and applied the Harmony Standard fairly in imposing the Roof Condition. The determination whether the AC's "exercise of [its approval] authority [is] reasonable . . . necessarily turns on the facts of the situation at hand."[41] At this stage, I find the evidence is insufficient for me to determine whether the AC's actions were reasonable.

The AC's final approval provides only the statement that the "roof color must match as closely as possible to the existing metal roof on the residence," and

---

[41] *Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 1252351, *7 (Del. Ch. May 12, 2005); *Benner v. Council of Narrows Ass'n of Owners*, 2014 WL 7269740, at *10 (Del. Ch. Dec. 22, 2014), *adopted,* (Del. Ch. Mar. 16, 2015) ("Typically, the reasonableness of a decision of this nature would appear to be a disputed issue of fact requiring the Court to hear testimony from the witnesses.").

does not address whether the Addition's roof color is a soft tone.[42] In its answering brief, the Association contends that, in approving the Addition, the AC believed that the Addition's roof color "would appear as though the roof was a part of the original structure," and would match "the pre-existing section of the metal roof on the rear of the home."[43]

Since the AC imposed the Roof Condition as a part of its approval, it either concluded that the roof color was not a soft tone, without indicating that in the approval, or it did not consider the Addition's plans under the Color Standard and reviewed them only under the Harmony Standard. To be enforceable, the Association must show the AC applied the relevant standards on a reasoned and nonarbitrary basis (not on subjective aesthetics) when it imposed the Roof Condition. The AC's approval, itself, does not provide definite reasons for the imposition of the Roof Condition. And, the communications between the parties

---

[42] D.I. 1, Ex. F.

[43] Pet'r's Answering Br., at 25. The Association's answering brief details communications between the AC and the Babbitts and their contractor concerning the Addition's plans, which were submitted to the AC by the contractor on March 2, 2018. *Id.*, at 8. Specifically, on March 4, 2018, the AC indicated to the contractor that "it is always the intent of the AC to have these garages look as much as possible as an extension of the house." *Id.*, at 10-11. The contractor responded to the AC that the exterior "will be a perfect match to the existing home. . .[with the] only difference in material [being] the metal roof, but the color will complement the home beautifully." *Id.*, at 11. After a period of time following the Addition's completion, the AC sent an email on May 6, 2019 advising the Babbitts that the Addition "looks great, with the only exception being the roof color," which does not match the existing metal roof. *Id.*, at 16.

did not focus on whether the Addition's roof color would be visually disharmonious with its surroundings and the adjacent/neighboring properties but, instead, concentrated on whether the Addition's roof color would be substantially similar to that of other structures on the Property.[44] Further, the Association argues that the AC "has historically been more demanding in its review of additions than the review of plans for a new home," in order to "create as much as possible an impression that it was not an addition but instead part of the original structure."[45]

At this stage, there is not sufficient evidence to determine whether the AC concluded the color was not a soft tone (since soft tones are automatically acceptable under the Color Standard), and whether the AC reasonably applied the Harmony Standard (if applicable), including whether the neighboring properties in Wild Quail have sufficient visual coherence in their color schemes to support the imposition of the Roof Condition.[46] Accordingly, viewing evidence in the light

---

The Babbitts responded that the color of the metal roof matches the "color of the shingle roof." *Id.*, at 17.

[44] *See generally Benner*, 2014 WL 7269740, at *7-10. In *Benner*, the Court held the applicable deed restrictions unenforceable, and also found the association's rejection of the homeowner's request unreasonable since the applicable standard argued by the association (whether the improvement at issue was "substantially similar to original construction" on the property) differed from the standard applied by the architectural review committee members (whether the improvement was similar to improvements constructed by other owners in the community). *Id.*, at *10.

[45] Pet'r's Answering Br., at 22.

[46] The Babbitts entered one photograph of the Addition's metal roof into evidence, which shows portions of the three different roofs on the Babbitts' home. Resp'ts' Opening Br.,

most favorable to the non-moving party, I find material disputed facts remain concerning the reasonableness of the AC's application of the standards and desire to inquire more thoroughly into the facts to clarify the application of the law to the circumstances.

## IV.    Conclusion

For the reasons set forth above, I recommend the Court deny the Babbitts' motion for summary judgment. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Sincerely,

/s/ Patricia W. Griffin
Patricia W. Griffin,
Master in Chancery

---

Ex. A. Color differentials between the roofs are not clearly shown in the photograph. And, the Association discussed the limited number of metal roofs in Wild Quail, noting that the Property is the only one with both asphalt shingle and metal roofs and with three different roof colors. Pet'r's Answering Br., at 24, n. 6. I consider *Lawhon*, which is cited by the Association. 2008 WL 5459246 (Del. Ch. Dec. 31, 2008). In *Lawhon*, the Court upheld, after trial, the architectural review committee's disapproval of the color and orientation of the Lawhon's newly built home based upon the visual harmony standard. *Id.*, at *8. The Court concluded that "[t]he home's color is disharmonious with a presently well-developed common scheme, and its proposed perpendicular orientation would create an incongruous appearance." *Id.* It noted the color of the Lawhon home "would be a color unlike the rest – a deep red instead of the earth tones of yellow, clay, white and beige [of the other homes in the community]." *Id.*, at *4. At this juncture, I do not find the evidence sufficient to determine whether the Addition's roof color is disharmonious with its surroundings and adjacent/neighboring properties.