IN THE SUPREME COURT OF THE STATE OF DELAWARE

ALAPOCAS MAINTENANCE §
CORPORATION and ALAPOCAS §    No. 294, 2022
MAINTENANCE CORPORATION §
BOARD OF DIRECTORS, §
§    Court Below – Court of Chancery
§    of the State of Delaware
Defendants-Below, §
Appellants, §
§    C.A. No. 2021-0655
v. §
§
WILMINGTON FRIENDS §
SCHOOL, INC., §
§
§
Plaintiff-Below, §
Appellee. §

Submitted: May 24, 2023
Decided:    August 7, 2023

Before **TRAYNOR**, **LeGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record below, and following oral argument, it appears to the Court that:

(1)    This appeal involves the application of deed restrictions to a school's proposal to expand its existing facilities on a 21-acre lot the school owns in an otherwise residential neighborhood.  The homeowners' association denied the school's proposal on the basis that it was not in harmony with its surroundings and would have a negative effect on the outlook from neighboring properties because the proposal would increase the lot's developed areas and decrease green space.  The

Court of Chancery entered judgment in favor of the school, reasoning that the deed restrictions on which the homeowners' association relied could not be applied in a reasonable and non-arbitrary way to impose density limitations or open space requirements on the school. We agree with the Court of Chancery's analysis and affirm.

(2) The appellants, Alapocas Maintenance Corporation ("AMC") and the Alapocas Maintenance Corporation Board of Directors (the "Board" and collectively with AMC, "Appellants"), are charged with enforcing the deed restrictions in a neighborhood in North Wilmington called Alapocas. Alapocas consists of 131 private homes and a 21-acre lot currently occupied by part of the Wilmington Friends School, Inc. ("WFS"). WFS, the appellee, is a college preparatory private school founded in 1748.

(3) Alapocas was created in the 1930s by William Bancroft and his non-profit corporation, Woodlawn Trustees, Inc. The neighborhood is governed by deed restrictions (the "Deed Restrictions") that were created through an indenture between Woodlawn Trustees, Inc. and Reuben Satterthwaite, Jr. dated December 10, 1936.[1] The Deed Restrictions were assigned to AMC under an Assignment of Rights and Easements executed on February 2, 1973.[2] AMC is Alapocas's homeowners'

---

[1] App. to Opening Br. at A27-33.
[2] Id. at A17.

association and is managed by the Board. During the period relevant to the current dispute, the Board was composed of nine volunteer members, all of whom were Alapocas residents.

(4)     WFS was located in Alapocas when the Deed Restrictions were drafted and the neighborhood was incorporated. The Deed Restrictions refer to WFS's lot as the "Friends School Tract."[3] The Friends School Tract currently houses WFS's "upper school," which consists of the school's middle and high school grades.[4] WFS also owns a separate "lower school" campus adjacent to Alapocas for students in preschool and the elementary grades.[5]

(5)     In October 2019, WFS announced that it had entered into an agreement with Incyte Corporation to sell the lower school campus to Incyte for $50 million.[6] WFS simultaneously announced that it was "exploring the possibility" of building a new lower school complex on the Friends School Tract.[7] Over the next year, WFS and the Board met several times to discuss the concept and preliminary plans for the construction of a new lower school campus in Alapocas.[8]

(6)     The Deed Restrictions contain several provisions governing improvements to lots within the neighborhood, although the parties disagree about

---

[3] *Id.* at A30.
[4] *Id.* at A19.
[5] *Id.* at A19, A76.
[6] *Id.* at A141, A414.
[7] *Id.* at A141.
[8] *Id.* at A36.

3

which provisions govern the Friends School Tract. The Deed Restrictions generally limit buildings in the neighborhood to private residences,[9] but Paragraph 3 of the Deed Restrictions refers to the approval process for buildings used for "schools, churches, libraries, or for recreational, educational, religious or philanthropic purposes." Specifically, Paragraph 3 provides:

> Buildings to be used for schools, churches, libraries, or for recreational, educational, religious or philanthropic purposes may be erected and maintained in locations approved by said Woodlawn Trustees, Incorporated, provided the design of such building be approved by said Woodlawn Trustees, Incorporated, and further provided there has been filed in the office of the Recorder of Deeds, in and for New Castle County, an Indenture or other Instrument of Writing executed by the 11 said Woodlawn Trustees, Incorporated, approving the location, design, and limiting the uses to which such buildings may be put.[10]

WFS takes the position that Paragraph 3 exclusively governs the approval process for buildings and improvements on the Friends School Tract.

(7) Appellants, on the other hand, argue that both Paragraph 3 *and* Paragraph 5 of the Deed Restrictions apply to any proposals to improve the Friends School Tract. Paragraph 5 states that:

> No building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition to or change or alteration therein be made, until plans and specifications, plot plan and grading plan, or satisfactory information shall have been submitted to and approved in writing by said Woodlawn Trustees, Incorporated. The said Woodlawn Trustees, Incorporated, shall have the right to refuse to approve any such plans or specifications which in its opinion are not suitable or

---

[9] *Id.* at A30, ¶ 1.
[10] *Id.* at A30.

4

desirable; and in so passing upon such plans and specifications the said Woodlawn Trustees, Incorporated, may take into consideration the suitability of the proposed building or other structure and of the materials of which it is to be built, to the site upon which it is proposed to erect same, the harmony thereof with the surroundings and the effect of the building or other structure as planned on the outlook from the adjacent or neighboring properties.[11]

WFS contends that Paragraph 5 does not apply to the Friends School Tract. To support its position, WFS relies on Paragraph 11 of the Deed Restrictions, which states that if the tract "shall no longer be used for school purposes and shall be used for residential purposes, said land shall be subject to all the limitations, reservations, restrictions and conditions herein contained."[12] In WFS's view, this means the restrictions applicable to the residential lots, including Paragraph 5, do not apply to the Friends School Tract unless and until it is used for residential purposes.

(8) In October 2020, WFS submitted its design proposal to the Board and formally sought approval for WFS's plans to build a new lower school on the upper school campus (the "Lower School Project").[13] The Board met in December 2020 to review WFS's proposal, and on January 7, 2021, the Board sent a letter to WFS refusing to approve the Lower School Project.[14] In its letter, the Board referenced

---

[11] *Id.* at A31.
[12] *Id.* at A32.
[13] This was not the first time WFS sought approval for changes to the Friends School Tract. The Board approved all WFS's previous requests for changes, including the construction of a gymnasium in 1997, the construction of an auditorium and atrium in 2013, and the construction of additional classrooms in 2013. *Id.* at A169-93.
[14] *Id.* at A35-39.

5

Paragraphs 3 and 5 of the Deed Restrictions and explained that the project would "substantially increase the developed areas" of the Friends School Tract "to the detriment of the existing open green space at the heart of the neighborhood."[15]

(9) The Board explained that the Lower School Project would have a number of adverse consequences, including that (i) the planned buildings would "obstruct serene views," "inject crowdedness to the existing peaceful views," and "increase noise and building light"; (ii) the proposal would triple the number of parking spaces, increase the number of roadways, and decrease the fields in a way that would "devastate the existing nature of the neighborhood"; and (iii) the project would bring more traffic to neighborhood streets already crowded during school drop-off and pick-up times.[16] Accordingly, the Board concluded that the Lower School Project was "not in harmony with the surroundings" and not "suitable for our quiet, peaceful, beloved neighborhood."[17]

(10) The parties exchanged additional correspondence but could not reach a resolution or compromise. On July 27, 2021, WFS filed a complaint in the Court of Chancery seeking declaratory and injunctive relief.[18] WFS sought declarations that WFS's plans were consistent with all applicable Deed Restrictions or that the Deed

---

[15] *Id.* at A35-37.
[16] *Id.* at A37.
[17] *Id.*
[18] *Id.* at A16-26.

6

Restrictions lacked objective criteria and therefore were invalid under Delaware law.[19] WFS also sought an injunction preventing AMC and the Board from interfering with WFS's construction of the Lower School Project.[20] Finally, WFS sought an award of attorneys' fees and costs under 10 *Del. C.* § 348(e).

(11) After AMC and the Board answered the complaint, the parties engaged in private mediation that unfortunately was not successful. WFS then moved for judgment on the pleadings as to Count I, seeking a declaration that Paragraph 5 of the Deed Restrictions does not apply to the Friends School Tract and that the Lower School Project complied with all applicable Deed Restrictions.[21] Appellants then filed a cross-motion for judgment on the pleadings as to all the counts in the complaint.[22] After the parties briefed and argued the motions, the Court of Chancery issued its June 14, 2022 letter opinion granting WFS's motion and denying the cross-motion (the "Letter Opinion").[23]

(12) The parties' cross-motions required the Court of Chancery to resolve whether the Deed Restrictions permitted the Board to reject the Lower School Project for the reasons stated in its January 7th letter denying approval. Rather than addressing WFS's claim that Paragraph 5 of the Deed Restrictions does not apply to

[19] *Id.* at A23-24.
[20] *Id.* at A24.
[21] *Id.* at A167.
[22] *Id.* at A197-233.
[23] *Wilmington Friends Sch., Inc. v. Alapocas Maint. Corp.*, 2022 WL 2134679 (Del. Ch. June 14, 2022).

7

the Friends School Tract, the Court of Chancery assumed for purposes of resolving the motions that Paragraph 5 was applicable.[24] The court then went on to consider whether the Board's application of Paragraph 5 to the Lower School Project was consistent with Delaware law.

(13) In rejecting the Lower School Project, the Board relied on Paragraph 5's harmony and outlook standards, which allow AMC to consider a proposal's harmony with the surroundings and its effect on the outlook from the adjacent or neighboring properties.[25] Appellants did not contend in the Court of Chancery or on appeal that the appearance or location of the buildings in the proposal were inharmonious with the balance of the neighborhood. Rather, in their motion for judgment on the pleadings, Appellants argued Paragraph 5 permitted the Board to reject the Lower School Project because the loss of open space and overcrowding was inharmonious with the neighborhood. In the Letter Opinion, the Court of Chancery held that the harmony standard could not be applied in a non-arbitrary way to limit the density of construction on the Friends School Tract, and the provision therefore was unenforceable with respect to WFS and the Lower School Project.[26]

---

[24] *Id.* at *2.
[25] *Id.*
[26] *Id.* at *2-4.

8

(14) On July 20, 2022, the Court of Chancery issued an order granting final judgment to WFS as set forth in the Letter Opinion and dismissing the remaining counts in the complaint as moot.[27] This appeal followed.

(15) AMC and the Board raise three issues on appeal. *First*, they argue the Court of Chancery erred in applying Delaware law by construing the enforceability of Paragraph 5's harmony standard too narrowly. Appellants assert Delaware courts uphold the application of harmony standards in two circumstances: (i) when the community has distinctive characteristics of a common scheme, or (ii) when the proposed building is obviously incongruous with the rest of the community. Appellants maintain the trial court only considered the first circumstance and failed to consider that the Board rejected the Lower School Project based on its obvious incongruity with the rest of the neighborhood. *Second*, Appellants contend the trial court failed to consider that the Board also relied on Paragraph 5's outlook standard in rejecting the Lower School Project, and that standard provided an additional reasonable basis for the Board's decision. *Finally*, Appellants argue that, at a minimum, the Court of Chancery decided the case prematurely and on an incomplete factual record.

(16) A trial court's decision granting a motion for judgment on the pleadings presents a question of law, which we review *de novo* to determine whether the court

---

[27] Opening Br. Ex. B.

committed legal error in formulating and applying legal precepts.[28]  Our review is limited to the pleadings' contents.[29]  A decision granting a motion for judgment on the pleadings should be sustained when no material issue of fact exists and the moving party is entitled to judgment as a matter of law.[30]

(17)  Delaware law is well-settled regarding the interpretation and enforcement of deed restrictions like those at issue here, and the Vice Chancellor applied the law correctly.  Deed restrictions that limit the use of real property are construed strictly, with any ambiguity being resolved in favor of the landowner.[31]  Nevertheless, restrictive covenants are enforced in Delaware, including restrictions—like the harmony standard in this case—that direct a reviewing authority or board to consider whether a proposed improvement is harmonious with its surroundings.[32]  Enforcement of such harmony criteria, however, must meet two conditions.   First, the community or neighborhood at issue must possess a "sufficiently coherent visual style"[33] to allow the reviewing authority to assess

---

[28] *OptiNose AS v. Currax Pharms., LLC*, 264 A.3d 629, 635 (Del. 2021); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993).

[29] *Desert Equities, Inc.*, 624 A.2d at 1204.

[30] *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 925 (Del. 2017).

[31] *Tusi v. Mruz*, 2002 WL 31499312, at *3 (Del. Ch. Oct. 31, 2002) ("[B]ecause they restrict the 'free use of property,' restrictive covenants must be strictly construed.") (quoting *Seabreak Homeowners Ass'n, Inc. v. Gresser*, 517 A.2d 263, 269 (Del. Ch. 1986)); *Dolan v. Vills. of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 2810724, at *3 (Del. Ch. Oct. 21, 2005) ("The Deed Restriction, if ambiguous, of course, must be read in Dolan's favor.") (citing *Alliegro v. Home Owners of Edgewood Hills, Inc.*, 122 A.2d 910, 912 (Del. Ch. 1956)).

[32] *Seabreak Homeowners Ass'n, Inc.*, 517 A.2d at 268.

[33] *Lawhon v. Winding Ridge Homeowners Ass'n, Inc.*, 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008) (quoting *Dolan*, 2005 WL 2810724, at *4).

whether a proposal would "disrupt the visual harmony" of the affected community.[34]

Harmony restrictions must contain a "reasoned, non-arbitrary basis" for the reviewing authority to assess the proposal;[35] the restriction cannot rely on "abstract aesthetic desirability."[36]  Second, permission must not be withheld unreasonably, and the reviewing authority bears the burden of showing that its actions were reasonable.[37]

(18)   Appellants correctly argue that there are two categories of cases in which harmony standards have been upheld as appropriately enforcing a neighborhood's "sufficiently coherent visual style."  The first category of cases involves communities with distinctive architectural characteristics such that harmony can be enforced on the basis of objective, visual elements.[38]  For example, in *Dolan v. Villages of Clearwater Homeowner's Association, Inc.*, the Court of Chancery upheld an association's decision to deny proposed improvements that were at odds with the neighborhood's consistent "Key West" style, which had a "distinctive look" that "implicate[d] objective exterior elements."[39]  The second

---

[34] *Dolan*, 2005 WL 2810724, at *4.

[35] *Id.*; *BBD Beach, LLC v. Bayberry Dunes Ass'n,* 2022 WL 763466, at *6 (Del. Ch. Mar. 10, 2022).

[36] *Lawhon*, 2008 WL 5459246, at *5; *see also Seabreak Homeowners Ass'n, Inc.*, 517 A.2d at 269 ("[W]here the language used in the restrictive covenant empowering the committee is overly vague, imprecise, or so unclear as not to lend itself to evenhanded application, then the grant of authority is normally not enforceable.").

[37] *Dolan*, 2005 WL 2810724, at *4; *Seabreak Homeowners Ass'n, Inc.*, 517 A.2d at 270.

[38] *See Dolan*, 2005 WL 2810724, at *4.

[39] *Id.*

11

category of cases involves proposed improvements that were "obviously incongruous" with the rest of the common interest community in a way that could be objectively assessed.[40] Examples of cases falling within this category include review boards' decisions to reject improvements as "inharmonious" based on (i) a home's proposed color and perpendicular orientation that were at odds with a "well-developed common scheme" in the neighborhood;[41] and (ii) an outbuilding's size and appearance, which dwarfed and otherwise was visibly different from every other outbuilding in the neighborhood.[42]

(19)  The Court of Chancery concluded that WFS was entitled to judgment as a matter of law because "AMC cannot enforce an open space requirement, not provided for explicitly via covenant, and that it applies to no other property in Alapocas, under the rubric of 'harmony.'"[43]  The Vice Chancellor explained that reading the harmony standard to allow the Board to impose open space or density limitations on the Friends School Tract was not consistent with Delaware law because any such requirement was not based on a sufficiently coherent visual style and instead reflected the Board's aesthetic sensibilities.[44]

---

[40] *BBD Beach, LLC*, 2022 WL 763466, at *6.
[41] *Lawhon*, 2008 WL 5459246, at *8.
[42] *Christine Manor Civic Ass'n v. Gullo*, 2007 WL 3301024, at *2 (Del. Ch. Nov. 2, 2007).
[43] *Wilmington Friends Sch., Inc.*, 2022 WL 2134679, at *2.
[44] *Id.* at *2, *4.

(20) Appellants contend the trial court limited its inquiry to whether Alapocas had a distinctive architectural style such that the harmony standard could be enforceable only under cases like *Dolan*. But that argument misreads the trial court's decision. Although the trial court discussed and distinguished *Dolan*,[45] it also considered and distinguished cases applying a harmony standard to an "obviously incongruous" proposed improvement.[46] The Court of Chancery explained that this case was distinct from those involving incongruity because there is only one non-residential lot in Alapocas,[47] and the Board therefore could not point to a visual "common scheme" to reject the Lower School Project on the basis of open space, conversion of fields to parking areas, or "injecting crowdedness to the existing peaceful views."[48] That is, the proposal could not be objectively incongruous on the bases cited by the Board because there is no other non-residential property in the neighborhood that could define standards from which the proposal departs.[49] For that reason, this case resides on a much different plane than those comparing the orientation or color of houses or the sizes of garages. The Court of Chancery

---

[45] *Id.* at *2-3.

[46] *Id.* at *3 n.23.

[47] *Id.* at *3.

[48] *See* App. to Opening Br. at A34-39.

[49] The Court of Chancery assumed Paragraph 5 applied to the Friends School Tract, and we adopt that assumption for purposes of this appeal. Although WFS argued to the trial court and on appeal that only Paragraph 3 applies to the Friends School Tract while it is operated as a school, we need not address that argument because there are independent grounds to grant judgment to WFS.

13

considered both categories of cases involving harmony standards and correctly applied those legal standards to the undisputed facts before it.[50]

(21) Appellants next argue that the Court of Chancery failed to consider the Board's citation to Paragraph 5's outlook standard. That portion of the Deed Restrictions allows the Board to consider the effect of the proposed improvement "on the outlook from the adjacent or neighboring properties." Appellants concede that Delaware courts have concluded that substantively identical outlook standards, standing alone, are unenforceable because they lack any built-in, objective standards.[51] Appellants, however, argue that an outlook standard may be enforceable when it is applied in conjunction with another objectively enforceable factor, such as the harmony standard. But, as explained above, the harmony standard cannot be applied objectively to create a density requirement applicable to the

---

[50] The trial court did not address, and we do not decide, whether the harmony standard could be applied in a non-arbitrary manner to limit crowding or density on the *residential* properties in Alapocas. We similarly are not stating whether, to the extent that Paragraph 5 applies to the Friends School Tract, the harmony standard could be applied to future proposals WFS might make to improve its property. The trial court's narrow holding, which we affirm, was simply that the harmony standard could not be employed to create crowding or open space limitations on the Friends School Tract because there is "no criteria by which to apply the 'harmonious' standard to the School on density grounds." *Wilmington Friends Sch., Inc.*, 2022 WL 2134679, at *3. Accordingly, Appellants' reference to policy considerations or how this case might limit the application of similar deed restrictions in other neighborhoods is misplaced and not relevant to our review of the narrow decision below.

[51] Opening Br. at 41; *Seabreak Homeowners Ass'n, Inc.*, 517 A.2d at 270 ("[T]he term 'outlook' has no built-in, objective standard that would enable it to be applied in an evenhanded manner or to be used as a guideline by lot owners in designing their residences."); *see also Abbott v. FD Builders*, 2000 WL 1800137, at *5 (Del. Ch. Nov. 29, 2000) (finding that outlook standard did not provide objective guidance by which architectural review committee could establish a setback requirement).

14

Friends School Tract. Accordingly, the Court of Chancery was correct in not separately considering the outlook standard once it concluded Appellants could not apply the harmony standard in the manner used in this case.

(22) Finally, Appellants contend that the Court of Chancery's decision was procedurally premature, and the court should not have resolved the issues before it on the basis of the allegations in the pleadings. Appellants assert that the trial court improperly drew inferences in WFS's favor at the pleadings stage and should have denied the parties' cross-motions for judgment on the pleadings in order to consider evidence regarding whether the Lower School Project could have been found, as a factual matter, to be objectively incongruous with the neighborhood as a whole. This argument contravenes Appellants' position in the Court of Chancery, where they invited the trial court to resolve the dispute on the papers, cross-moved for judgment on the pleadings, and repeatedly argued the issue before the Court was a "legal question" on which AMC should prevail "as a matter of law."[52] Moreover, Appellants' argument misunderstands the trial court's decision. The Court of Chancery held that the harmony standard could not be applied in a reasoned, non-arbitrary manner to impose density restrictions on the Friends School Tract because there was no visual, objective reference to which the property owner or the Board could refer in applying that standard in that way to the Friends School Tract. The

---

[52] App. to Opening Br. at A228-31, A292, A298, A385-86, A395-96, A408-09.

15

Court neither drew inferences in WFS's favor nor resolved any factual issue. Instead, the Court reached its decision as a matter of law.[53]

NOW, THEREFORE, IT IS ORDERED that the opinion and order of the Court of Chancery be AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[53] *See Wilmington Friends Sch., Inc.*, 2022 WL 2134679, at *1.